UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


NANCY K. NELSON,                          )        No. EDCV 07-1646-RC
                                          )
          Plaintiff,                      )
                                          )        OPINION AND ORDER
     v.                                   )
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
          Defendant.                      )
_____)

     Plaintiff Nancy K. Nelson filed a complaint on December 13, 2007,
seeking review of the Commissioner's decision denying her application
for disability benefits.  The Commissioner answered the complaint on
April 28, 2008, and the parties filed a joint stipulation on June 3,
2008.


                             **BACKGROUND**

                                  **I**

     On February 5, 2004 (protective filing date), plaintiff applied
for disability benefits under Title II of the Social Security Act
("Act"), 42 U.S.C. § 423, claiming an inability to work since
January 1, 2004, due to chronic fatigue immune dysfunction syndrome,

fibromyalgia, and mitral valve prolapse.  Certified Administrative Record ("A.R.") 57-60, 70.  The plaintiff's application was initially denied on May 22, 2004, and was denied again on September 13, 2004, following reconsideration.  A.R. 43-52.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Barry S. Brown ("the ALJ") on June 9, 2005, and February 9, 2006.  A.R. 53, 374-419.  On September 28, 2006, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 10-19.  The plaintiff appealed this decision to the Appeals Council, which denied review on October 30, 2007.  A.R. 5-9.

## II

The plaintiff, who was born on July 22, 1944, is currently 64 years old.  A.R. 58, 377, 393.  She has a law school degree and has previously worked as an attorney.  A.R. 71, 76, 97-100, 377, 394-97.

Between March 27, 2001, and September 6, 2005, Na'Imah D. Powell, M.D., treated plaintiff, whom he diagnosed with chronic fatigue syndrome[1] and fibromyalgia.[2]  A.R. 249-65, 311-17, 332-33.  Laboratory

_____

[1]  Social Security Administration Ruling SSR 99-2p, describes chronic fatigue syndrome as:

a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity.  It is characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities. . . . Under the [Center for Disease Control ("CDC")] definition, the hallmark of [chronic fatigue syndrome] is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite

onset (i.e., has not been lifelong), cannot be
explained by another physical or mental disorder, is
not the result of ongoing exertion, is not
substantially alleviated by rest, and results in
substantial reduction in previous levels of
occupational, educational, social, or personal
activities.  Additionally, the current CDC definition
of [chronic fatigue syndrome] requires the concurrence
of 4 or more of the following symptoms, all of which
must have persisted or recurred during 6 or more
consecutive months of illness and must not have
pre-dated the fatigue:
    Self-reported impairment in short-term memory
    or concentration severe enough to cause
    substantial reduction in previous levels of
    occupational, educational, social, or
    personal activities;
    Sore throat;
    Tender cervical or axillary lymph nodes;
    Muscle pain;
    Multi-joint pain without joint swelling or
    redness;
    Headaches of a new type, pattern, or
    severity;
    Unrefreshing sleep; and
    Postexertional malaise lasting more than 24
    hours.
Within these parameters, an individual with [chronic
fatigue syndrome] can also exhibit a wide range of
other manifestations, such as muscle weakness, swollen
underarm (axillary) glands, sleep disturbances, visual
difficulties (trouble focusing or severe
photosensitivity), orthostatic intolerance (e.g.,
lightheadedness or increased fatigue with prolonged
standing), other neurocognitive problems (e.g.,
difficulty comprehending and processing information),
fainting, dizziness, and mental problems (e.g.,
depression, irritability, anxiety).

SR 99-2p, 1999 WL 271569, *1-*2 (S.S.A.); see also Dorland's
Illustrated Medical Dictionary, 1752 (29th ed. 2000) (Chronic
fatigue syndrome is "persistent debilitating fatigue of recent
onset, with reduction of physical activity to less than half of
usual, accompanied by some combination of muscle weakness, sore

1  tests performed on plaintiff on March 27, 2001, September 9, 2002, and

2  March 10, 2005, were positive for Epstein-Barr virus.  A.R. 263-65,

3  359.  On August 28, 2003, Dr. Powell certified plaintiff had chronic

4  fatigue/fibromyalgia, A.R. 249, and on July 13, 2004, he reiterated

5  those diagnoses.  A.R. 317.

6

7      Between June 14, 2001, and March 15, 2005, Oscar Matthews, M.D.,

8  treated plaintiff, whom he diagnosed with symptomatic mitral valve

9

10

11

---

12  throat, mild fever, tender lymph nodes, headaches, and
13  depression, with the symptoms not attributable to any other known
    causes.").

14      [2]  Fibromyalgia is:

15

16      a rheumatic disease that causes inflammation of the
        fibrous connective tissue components of muscles,
17      tendons, ligaments, and other tissue.  Common symptoms
        . . . include chronic pain throughout the body,
18      multiple tender points, fatigue, stiffness, and a
        pattern of sleep disturbance that can exacerbate the
19      cycle of pain and fatigue associated with this disease.
        Fibromyalgia's cause is unknown, there is no cure, and
20      it is poorly-understood within much of the medical
        community.  The disease is diagnosed entirely on the
21      basis of patients' reports of pain and other symptoms.
        The American College of Rheumatology issued a set of
22      agreed-upon diagnostic criteria in 1990, but to date
        there are no laboratory tests to confirm the diagnosis.
23

24  Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).
25  Fibromyalgia is a physical disease, Jordan v. Northrop Grumman
    Corp. Welfare Benefit Plan, 370 F.3d 869, 873 (9th Cir. 2004),
26  which "is diagnosed based on widespread pain with tenderness in
    at least eleven of eighteen sites known as trigger points."
27  Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003);
28  Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).

4

prolapse[3] and a history of chronic fatigue syndrome.  A.R. 267-93, 318-28.  An echocardiograph performed on November 21, 2002, showed systolic mitral valve prolapse, but was otherwise normal, and a carotid duplex scan showed bilateral obstruction of the internal carotid arteries with mild plaque.  A.R. 326-27.  On March 17, 2003, Dr. Matthews decided not to treat plaintiff for mitral valve prolapse due to the rarity of the arrhythmias on Holter monitoring.  A.R. 277. On April 22, 2003, plaintiff underwent a myocardial perfusion study, which was normal at rest, and which showed a modest change in the mid-anterolateral wall with exercise.  A.R. 306.  On June 3, 2003, plaintiff underwent noninvasive cardiac testing, which demonstrated minimally decreased resting ejection fraction of 44%,[4] increasing appropriately to 63% with global augmentation of wall motion with the exception of the lateral wall.  A.R. 273.  On April 13, 2004, plaintiff underwent: an echocardiograph, which showed possible borderline right ventricular enlargement and mild mitral valve prolapse; a carotid duplex scan, which was normal; and an electrocardiogram exercise test and a myocardial perfusion study, which were negative for ischemia.  A.R. 321-25.  Laboratory studies taken on April 29, 2004, were positive for Epstein-Barr nuclear

---

[3]  The mitral valve is "the valve between the left atrium and left ventricle of the heart."  Dorland's Illustrated Medical Dictionary at 1930.  Mitral valve prolapse is "redundancy or hooding of mitral valve leaflets so that they prolapse into the left atrium, often causing mitral regurgitation[.]"  Id. at 1466.

[4]  Ejection fraction is "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage.  It is normally 65 $\pm$ 8 per cent; lower values indicate ventricular dysfunction."  Dorland's Illustrated Medical Dictionary at 708.

1   antibodies.  A.R. 286-87, 356-57.

2   //

3      On April 20, 2004, Steven E. Gerson, D.O., examined plaintiff and

4   concluded she should be able to lift 10 pounds frequently and 20

5   pounds occasionally, stand and walk for 6 hours in an 8-hour workday,

6   and sit for 6 hours in an 8-hour workday.  A.R. 139-43.

7

8      On August 24, 2004, Evelyn Mendoza, M.D., examined plaintiff and

9   diagnosed her with most likely very mild benign cyclic neutropenia[5]

10   for which she was then currently asymptomatic.  A.R. 307-09.

11

12      On June 5-6, 2005, plaintiff was treated at the Inland Valley

13   Medical Center, where she was diagnosed with atypical chest pain,

14   gastroesophageal reflux disease, mitral valve prolapse,

15   fibromyalgia/chronic fatigue immune dysfunction syndrome, and a

16   history of osteoporosis.  A.R. 334-73.  Essentially, plaintiff was

17   admitted with chest pain and found to have gastroesophageal reflux

18   disease, which was treated.  Chest x-rays showed no evidence of acute

19   cardiopulmonary disease, and upper gastrointestinal x-rays revealed

20   moderately severe gastroesophageal reflux disease with no evidence of

21   a hiatal hernia.  A.R. 340-41.  A cardiac stress test showed no

22   evidence of infarction or ischemia with an ejection fraction of 50%,

23   and a carotid duplex test was normal.  A.R. 341-43.

24

25 _____

26     [5]  Neutropenia is "a decrease in the number of neutrophils in the blood."  Dorland's Illustrated Medical Dictionary at 1215.

27   Cyclic neutropenia is "a chronic type of neutropenia that abates and recurs, accompanied by malaise, fever, stomatitis, and

28   various types of infections."  Id.

1    On June 23, 2005, medical expert Joselyn E. Bailey, M.D., opined:

2  //

3      [Plaintiff] has had a variety of non-specific complaints

4      since 1999 such as dizziness, vomiting, salt craving, chest

5      fluttering, [and] tremors of hands and muscles[,] all of

6      which resolved,[ ]usually spontaneously and required no

7      prolonged treatment.  Blood tests, CT scan of the brain,

8      Holter monitor, Stress test, heart study, radionuclide

9      angiogram, exercise test and lab reports were all normal or

10     unremarkable.  [¶]  Her physical exam 4/20/04 was normal.

11     Her ongoing complaint was chronic fatigue 7/13/04.  At that

12     time the assessment of fibromyalgia was also made.  There

13     has been no objective documentation of chronic fatigue

14     syndrome as required to make the diagnosed [sic].  [¶]

15     Based on[]this information, she neither meets nor equals any

16     of the Listings.

17

18  A.R. 330 (citations omitted).  Dr. Bailey further opined plaintiff:

19  can sit for 8 hours in an 8-hour work day, and 1 hour at a time; can

20  stand for 6 hours in an 8-hour work day, and 1 hour at a time; can

21  walk for 4 hours in an 8-hour work day, and 1 hour at a time; can

22  occasionally lift and/or carry up to 25 pounds, squat and crawl; can

23  frequently lift and/or carry up to 10 pounds, bend, climb stairs, and

24  reach; is moderately restricted from working at unprotected heights;

25  and is mildly restricted from being around moving machinery.  A.R.

26  331.

27

28    Dr. Bailey also testified at the administrative hearing on

7

February 9, 2006, reiterating her assessment of plaintiff's physical limitations and opining there was no evidence plaintiff has chronic fatigue syndrome.  A.R. 378-87.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Sam v. Astrue, 550 F.3d 808, 809 (9th Cir. 2008) (per curiam); Vasquez v. Astrue, 547 F.3d 1101, 1104 (9th Cir. 2008).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in

the **Second Step**, the ALJ must determine whether the claimant has a
severe impairment or combination of impairments significantly limiting
her from performing basic work activities.  20 C.F.R. § 404.1520(c).
If so, in the **Third Step**, the ALJ must determine whether the claimant
has an impairment or combination of impairments that meets or equals
the requirements of the Listing of Impairments ("Listing"), 20 C.F.R.
§ 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has
sufficient residual functional capacity despite the impairment or
various limitations to perform her past work.  20 C.F.R. §
404.1520(f).  If not, in **Step Five**, the burden shifts to the
Commissioner to show the claimant can perform other work that exists
in significant numbers in the national economy.  20 C.F.R. §
404.1520(g).

Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
her alleged onset date, January 1, 2004.  (Step One).  The ALJ then
found plaintiff "has the following severe impairments: fibromyalgia
and chronic fatigue immune syndrome" (Step Two); however, she does not
have an impairment or combination of impairments that meets or equals
a Listing.  (Step Three).  The ALJ next determined plaintiff can
perform her past relevant work as an attorney; therefore, she is not
disabled.  (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can
still do despite her physical, mental, nonexertional, and other

1  limitations.    Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

2  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

3  the ALJ found plaintiff has the following RFC:

4

5        [Plaintiff can] lift and carry 25 pounds occasionally and 10

6        pounds frequently, sit for one hour at a time, and stand or

7        walk for one hour at a time, for a total of 8 hours sitting,

8        six hours of standing, and four hours of walking during an

9        eight[-]hour day.  The [plaintiff] can use her hands for

10       repetitive simple grasping, occasional pushing and pulling

11       of arm controls, and repetitive fine manipulation.  She can

12       use her right or left foot for repetitive pushing and

13       pulling of leg controls, and both feet on an occasional

14       basis.  The [plaintiff] can occasionally squat and crawl,

15       and frequently bend, climb stairs, and reach.  There is a

16       mild restriction against working . . . around moving

17       machinery, and moderate restriction against working at

18       unprotected heights.  Also, there [are] no restrictions

19       against working at exposure to marked changes in temperature

20       and humidity, driving automotive equipment, and exposure[]

21       to dust, fumes and gases.

22

23  A.R. 15-16.  However, plaintiff contends the ALJ's decision is not

24  supported by substantial evidence because, among other things, the ALJ

25  erroneously determined she was not a credible witness.

26

27       The plaintiff testified at the administrative hearing that she

28  experiences neck, right arm, lower back, hip, knee and foot pain, she

occasionally gets migraine headaches, and she recently had an episode of chest pain.  A.R. 397-401.  The plaintiff also reported she experiences severe fatigue daily, and has trouble sleeping at night. A.R. 404, 407.  She also stated that on a daily basis she gets sore throats, experiences dizziness, loses equilibrium, becomes confused and disoriented when she is fatigued, and she sometimes experiences nausea and vomiting and sees spots in front of her eyes.  A.R. 399, 402-05, 410-11, 417.  The plaintiff indicated she can walk for half an hour without resting, and she can stand for about 15 minutes in the morning without discomfort, but by the afternoon, it is difficult for her to stand at all.  A.R. 405-06.  She testified she usually lies down for about 3-4 hours during the day.  A.R. 408-09.  The plaintiff reported she does not have any problems sitting, and she can generally use her hands and fingers fine.  A.R. 406.

        Once a claimant has presented objective evidence that she suffers from an impairment that could cause pain or other nonexertional limitations,[6] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'"  Greger v. Barnhart, 464 F.3d 968,

_____

        [6]  "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

1   972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625,

2   635 (9th Cir. 2007).   Furthermore, if there is medical evidence

3   establishing an objective basis for some degree of pain and related

4   symptoms, and no evidence affirmatively suggesting that the claimant

5   is malingering, the ALJ's reasons for rejecting the claimant's

6   testimony must be "clear and convincing."   Morgan v. Comm'r of the

7   Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Vasquez, 547 F.3d

8   at 1104-05.

9

10      The ALJ partially rejected plaintiff's subjective complaints

11  because her "symptoms in combination are not so disabling that she is

12  unable to engage in activities typical of most individuals."   A.R. 17-

13  18.   Because "many home activities are not easily transferable to what

14  may be the more grueling environment of the workplace, where it might

15  be impossible to periodically rest or take medication[,]" Fair v.

16  Bowen, 885 F.2d 597, 603 (9th Cir. 1989), to base a negative

17  credibility determination on a claimant's daily activities, the ALJ

18  must make a finding that the claimant "'is able to spend a *substantial*

19  *part* of [her] day engaged in pursuits involving the performance of

20  physical functions that are transferable to a work setting. . . .'"

21  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting

22  Morgan, 169 F.3d at 600; emphasis in original).   Here, the ALJ found

23  plaintiff "testified she drives short distances, plays with the flute

24  for two hours, dresses herself, shops herself, and does some

25  housework, not including vacuuming and mopping."   A.R. 18.   The ALJ

26  also stated that "[t]he third-party statement of record from the

27  [plaintiff's] spouse shows that the [plaintiff] remains somewhat

28  active, and indicates that she does some dusting, laundry on

Saturdays, and makes the bed daily.  She also takes part in flute

practices and yoga for one hour a week." _Id._  The plaintiff testified

she plays the flute in an orchestra two hours, once a week.  A.R. 407-

08.  She occasionally shops, and could probably grocery shop if that

is all she did that day.  A.R. 408.  Furthermore, while plaintiff

stated she does do light housework, _id._, her husband clarified that

the chores plaintiff "does require minimal physical work and last 5-15

minute periods."  A.R. 90.  These limited activities, which are

"sporadic and punctuated with rest[,]" are "fully consistent" with

chronic fatigue syndrome.[7]  _Reddick v. Chater_, 157 F.3d 715, 722 (9th

Cir. 1998); _see also_ _Wilson v. Comm'r of Soc. Sec._, __ Fed. Appx. __,

2008 WL 5268548, *1 (9th Cir. (Ariz.)) ("Evidence that [the claimant]

occasionally drove to Phoenix, took a vacation to Hawaii, and

sometimes found the energy to go grocery shopping are not clear and

convincing evidence that the claimant led a life that is not

compatible with disabling [chronic fatigue syndrome and

fibromyalgia].");[8] _Blau v. Astrue_, 263 Fed. Appx. 635, 637 (9th Cir.

2008) (Although ALJ found claimant still drives, pays bills, does

taxes, shops, does the laundry, and successfully completed schooling

in real estate, such activities did not constitute "clear and

convincing" reason for rejecting claimant's subjective symptoms of

fatigue, diffuse pain, confusion and memory loss since "[t]he

---

[7]  Although the Commissioner highlights other daily
activities as inconsistent with plaintiff's claimed disability,
_see_ Jt. Stip. at 24:23-25:5, the ALJ did not cite them to support
his adverse credibility assessment; thus, this Court will not
address these daily activities.  _Tommasetti v. Astrue_, 533 F.3d
1035, 1039-40 n.2 (9th Cir. 2008); _Connett v. Barnhart_, 340 F.3d
871, 874 (9th Cir. 2003).

[8]  _See_ Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

activities the ALJ relied upon to discredit [claimant] are generally considered consistent with the sporadic nature of [chronic fatigue syndrome,]" because "none of [the claimant's] daily activities consume a substantial part of her day or require extended periods of concentration[,]" and as "[d]aily household chores and grocery shopping are not activities that are easily transferable to a work environment, 'where it might be impossible to periodically rest or take medication'" (citations omitted)); <u>Vertigan</u>, 260 F.3d at 1049-50 (claimant's ability to go grocery shopping with assistance, walk approximately an hour in malls, get together with friends, play cards, swim, watch television, read, take physical therapy, and exercise at home did not constitute clear and convincing reason for rejecting her pain testimony).

The ALJ's other reason for rejecting plaintiff's testimony is that it was contradicted by the medical evidence. A.R. 17. More specifically, the ALJ stated:

> The [plaintiff] has complained of pain and has displayed
> limited range of motion, but these are largely subjective
> signs. Clinical signs typically associated with chronic
> pain have not been consistently present on physical
> examination. There is no objective evidence of atrophy in
> the extremities, persistent neurological deficits (i.e.,
> reflex, motor or sensory loss), or persistent inflammatory
> signs (heat, redness, swelling, etc.). The [plaintiff] also
> complained of chronic fatigue and fibromyalgia. There were
> ongoing complaints of chronic fatigue; however, there is

1    limited evidence, which was significant [sic] to meet or

2    equal any of the listings.  As previously noted, the

3    [plaintiff's] blood pressure was 132/78.  The [plaintiff's]

4    heart had a regular rate and rhythm with a 1/6 murmur.  The

5    [plaintiff's] lungs were clear to auscultation.  The exam

6    was not consistent with acute congestive heart failure or

7    cardiac decompensation.  The [plaintiff] did not describe

8    any chest pain in the past suggestive of coronary

9    insufficiency.  Also, the medical records do not describe

10   the [plaintiff] as a surgical candidate relative to her

11   musculoskeletal complaints, nor has she required a series of

12   hospitalizations, prolonged participation in physical

13   therapy or a pain clinic, or other aggressive treatment

14   commonly utilized for chronic and debilitating pain.  There

15   is no evidence of side effects from medications which were

16   not eliminated or greatly reduced by changes in the types or

17   dosages. . . .  She also testified that she has no

18   prescription of crutches or walkers, has had no physical

19   therapy and/or psychological treatments.

20

21  A.R. 17-18.  Thus, although the plaintiff's claims she is disabled due

22  to chronic fatigue syndrome/fibromyalgia, see, e.g., A.R. 70, the ALJ

23  gave exceedingly short shrift to these complaints, noting only that

24  although plaintiff has consistently complained of fatigue, "there is

25  limited evidence[,]" which does not meet or equal a listed impairment.

26  A.R. 17.  However, "[t]he fact that a claimant's testimony is not

27  fully corroborated by the objective medical findings, in and of

28  itself, is not a clear and convincing reason for rejecting it."

Vertigan, 260 F.3d at 1049; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").  Moreover, to the extent the ALJ suggests plaintiff's credibility is suspect because she has received only conservative treatment for her illness, this is not a clear and convincing reason for rejecting her subjective complaints in this case since no definitive treatment for chronic fatigue syndrome exists. See Reddick, 157 F.3d at 727 ("[T]he ALJ considered only pain and its effect on Claimant's activities and the potential relief by medication, rather than fatigue which is the basis of Claimant's disability claim.  The ALJ's focus on pain medication and treatment is misplaced, as the CDC has made it clear that no definitive treatment for [chronic fatigue syndrome] exists.").

     Thus, "the ALJ provided unsatisfactory reasons for discounting [plaintiff's] credibility, and . . . his findings were unsupported by substantial evidence based on the record as a whole." Reddick, 157 F.3d at 724.  Therefore, the ALJ's assessment of plaintiff's RFC, and his subsequent conclusion that plaintiff retains the RFC to perform her past relevant work, are not supported by substantial evidence. Id. at 728.

**v**

16

1    When the Commissioner's decision is not supported by substantial

2    evidence, the Court has authority to affirm, modify, or reverse the

3    Commissioner's decision "with or without remanding the cause for

4    rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

5    1076 (9th Cir. 2002).  "Remand for further administrative proceedings

6    is appropriate if enhancement of the record would be useful."

7    Benecke, 379 F.3d at 593.  Here, because there are "insufficient

8    findings as to whether [plaintiff's] testimony should be credited as

9    true," remand is the appropriate remedy.  Connett, 340 F.3d at 876;

10   see also Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003)

11   (affirming district court's remand order when ALJ failed to properly

12   reject plaintiff's subjective complaints and lay testimony).[9]

13

14                              **ORDER**

15       IT IS ORDERED that: (1) plaintiff's request for relief is granted

16   and defendant's request for relief is denied; and (2) the

17   Commissioner's decision is reversed, and the action is remanded to the

18   Social Security Administration for further proceedings consistent with

19   this Opinion and Order, pursuant to sentence four of 42 U.S.C. §

20   405(g), and Judgment shall be entered accordingly.

21

22   ────────────────

23       [9]  Having reached this conclusion, it is unnecessary to
     reach the other issues plaintiff raises, none of which warrant
24   any further relief than herein granted.  On remand, the ALJ
     should address the significance, if any, of the positive Epstein-
25   Barr tests, see Reddick, 157 F.3d at 723 ("Claimant tested
     positive for the Epstein-Barr antibody, which frequently
26   correlates with [chronic fatigue syndrome]."), and plaintiff may
     present further medical evidence supporting her claims that she
27   is disabled by chronic fatigue syndrome and/or fibromyalgia.

28   R&R-MDO\07-1646.mdo - 2/17/09

1  DATE:  February 17, 2009          /S/Rosalyn M. Chapman
2                                 ROSALYN M. CHAPMAN
                                   UNITED STATES MAGISTRATE JUDGE
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28